UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELIZABETH ANNETTE CAMP,<br><br>                                  Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                                  Defendant. | Case No. 3:14-cv-05187-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

   Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

   On February 8, 2011, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications she became disabled beginning April

ORDER - 1

1, 2008. See ECF #9, Administrative Record ("AR") 20. Both applications were denied upon initial administrative review on April 27, 2011 and on reconsideration on July 8, 2011. See id. A hearing was held before an administrative law judge ("ALJ") on October 4, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 33-74.

In a decision dated October 22, 2012, the ALJ determined plaintiff to be not disabled. See AR 20-28. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 23, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481. On March 10, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on May 13, 2014. See ECF #9.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to consider whether plaintiff's depression, anxiety, posttraumatic stress disorder, fibromyalgia, and hand dysfunction are severe impairments; (2) in finding the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 had not been met or medically equaled: (3) in evaluating the opinion evidence from  Jesse McClelland, M.D.; and (4) in assessing plaintiff's residual functional capacity ("RFC"), including in regard to the marked functional limitations assessed by Maria W. Malcolm, Ph.D., relating to plaintiff's symptoms of depression and anxiety. For the reasons set forth below, the Court agrees the ALJ erred in failing to properly take into account the marked limitations Dr. Malcom assessed – and thus in finding plaintiff's

ORDER - 2

depressive or anxiety disorders were not severe and in assessing her RFC – and therefore in determining her to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting

ORDER - 3

Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

claims. See Smolen, 80 F.3d at 1290.

If at step three of the sequential evaluation process, a disability determination "cannot be made on the basis of medical factors alone," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

At step two in this case, the ALJ found plaintiff's alleged major depressive disorder and generalized anxiety disorder to be non-severe impairments. See AR 23. In so determining, the ALJ found in relevant part:

> . . . the claimant underwent [a] psychological evaluation with Maria Malcolm, Ph.D., in August 2011. In addition to the claimant's anecdotal history, Dr. Malcolm also noted having the claimant's records available for review, inclusive of Dr. McClelland's report. However, a majority of the records dealt with the claimant's subjective pain complaints. The claimant also reported being started recently on psychotropic medications. However, those medications were only started two weeks prior through Cowlitz Family Health by Matthew Oxiles, ARNP, on July 16, 2012. *Nurse Practitioner Oxiles prescribed Wellbutrin (for anxiety) with Xanax (a benzodiazepine) and Prozac for depression (Ex. 9F/pg. 5)*. Dr. Malcolm diagnosed *anxiety disorder*, not

ORDER - 5

>   otherwise specified (NOS) with the need to *rule-out* posttraumatic stress
>   disorder, secondary to alleged domestic violence history which had not
>   previously been alleged. For Axis III diagnoses, Dr. Malcolm assessed
>   fibromyalgia, headaches, back pain and neuropathy. The claimant's GAF
>   score was assessed at an interim of 46,[2] confirmed by Dr. Malcolm's opinion
>   that the claimant's anxiety will impair the claimant for a minimum of 7
>   months to a maximum of 9 months (Ex. 6F/pgs. 9-10). . . .

AR 24-25 (emphasis in original). Following this summarization, the ALJ concluded that "[i]n consideration of all the medical evidence of record," plaintiff's depressive and anxiety disorders "do not cause any functional limitations, and are therefore non-severe." AR 25. The ALJ then went on to find in regard to step four of the disability evaluation process that plaintiff had the residual functional capacity to perform light exertional work, with no limitations stemming from any of her alleged mental impairments, which did not preclude plaintiff from performing her past relevant work. See AR 26-27.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting DSM-IV-TR at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

ORDER - 6

within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

ORDER - 7

2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In addition to arguing the ALJ erred in finding her depressive and anxiety disorders were not severe impairments, plaintiff also argues the ALJ erred in failing to properly account for the marked functional limitations found by Dr. Malcom in assessing her RFC.  The Court agrees the ALJ so erred. Dr. Malcolm issued two evaluation reports, one in mid-March 2010, and a second one in mid-August 2010, in which she assessed plaintiff with several marked mental limitations in the area of social functioning due to her depression and anxiety symptoms. See AR 321, 327, 343, 351.[3] In the narrative sections of both reports, Dr. Malcolm opined as well that plaintiff's psychological symptoms would present significant barriers to her ability to function vocationally. See AR 345, 353.

The ALJ, however, does not specifically discuss these functional assessments. Indeed, he fails to even mention Dr. Malcolm's mid-March 2010 evaluation report. See AR 23-25. Further, the ALJ merely summarizes some of Dr. Malcolm's mid-August 2010 evaluation report, without providing any actual reasons for rejecting the assessed functional limitations contained therein, other than to go on to merely state generally that plaintiff's mental impairments did not cause any functional limitations and therefore were non-severe in light "of all the medical evidence of record." AR 25; see Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior

---

[3] As noted by defendant, the pages of Dr. Malcolm's evaluation reports are interspersed throughout the record out of sequential order.

ORDER - 8

cases have required, even when the objective factors are listed seriatim.").[4]

Dr. Malcolm's evaluation reports therefore constitute evidence that plaintiff suffers from more than *de minimis* work-related limitations that, if adopted, would have at least some impact on plaintiff's ability to perform her past relevant work, thereby calling into question that basis for the ALJ's non-disability determination. See AR 27-28. Defendant points out that Dr. Malcolm opined in her mid-August 2010 evaluation report that the limitations she assessed therein would last for a maximum of nine months, and thus do not satisfy the statutory durational requirements for establishing disability. See AR 326; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months).

The mid-August 2010 evaluation report, however, must be read in conjunction with the mid-March 2010 report.  In the latter report, while Dr. Malcolm opined the functional limitations assessed therein would last a minimum of only six months and a maximum of only eight months, that report was issued merely five months prior to the mid-August 2010 report. See AR 322.  In addition, because Dr. Malcolm estimated plaintiff would be restricted by the mental limitations she assessed in the mid-August 2010 report for a period of at least seven months, read together Dr. Malcolm in essence was opining in her reports that plaintiff would suffer from significant work-related limitations for a period of at least 12 months. See AR 322, 326. Accordingly, the durational requirement would be met here.

As noted above, at step four of the sequential disability evaluation process, the ALJ found plaintiff could perform her past relevant work, which did not require the performance of work-

---

[4] The Ninth Circuit went on to state that "[t]he ALJ must do more than offer his conclusions." Id. Rather, "[h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id.

ORDER - 9

related activities precluded by her RFC. See AR 27. But because as also noted above the ALJ erred in failing to provide valid reasons for rejecting the functional assessments of Dr. Malcolm, and because those assessments contain work-related limitations that likely would have a significant impact on plaintiff's ability to perform her past relevant work, the ALJ's residual functional capacity assessment and step four determination – in addition to his step two finding that plaintiff had no severe mental impairments – cannot be said to be supported by substantial evidence at this time and thus cannot be upheld.

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). As noted above, plaintiff requests remand for an outright award of benefits. But because it is far

ORDER - 10

from clear the ALJ would be required to adopt the mental functional limitations Dr. Malcolm assessed in light of the other evidence in the record the ALJ addressed in his decision and in regard to which no reversible error has been found, remand for further consideration of that evidence, plaintiff's RFC and her ability to perform her past relevant work – and, if necessary, other jobs existing in significant numbers in the national economy at step five of the sequential disability evaluation process[5] – is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 24th day of September, 2014.

Karen L. Strombom
United States Magistrate Judge

---

[5] If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).

ORDER - 11